DOROTHY R. BECKER ET AL., APPELLANTS, V. NATIONAL
AMERICAN INSURANCE COMPANY, A NEBRASKA
CORPORATION, APPELLEE.

276 N. W. 2d 202

Filed March 13, 1979. No. 41804.

Thomas P. Leary, for appellants.

Lyle E. Strom and Bruce D. Vosburg of Fitzgerald, Brown, Leahy, Strom, Schorr & Barmettler, for appellee.

Heard before SPENCER, McCOWN, CLINTON, and WHITE, JJ., and WARREN, District Judge.

McCOWN, J.

This is a statutory action by dissenting shareholders of a Nebraska stock insurance company for a finding and determination of the fair value of shares acquired by another corporation under the provisions of the Insurance Company Plan of Exchange Act. §§ 44-133.01 to 44-133.08, R. R. S. 1943. The District Court found that the fair value of the shares of defendant National American Insurance Company on November 8, 1973, did not exceed $1,139 per share, and dismissed plaintiffs' petition.

In September 1973, the defendant, National American Insurance Company, a Nebraska corporation, began proceedings under the Insurance Company Plan of Exchange Act by which H. F. Ahmanson and Company, the owner of 88.64 percent of the outstanding stock of National American, would acquire the remaining 11.36 percent of National American stock. Ahmanson owned 17,728 shares of National American stock and offered to pay $1,139 per share for each of the remaining 2,272 shares.

On September 6, 1973, the board of directors of National American Insurance Company adopted the plan of exchange. Thereafter the various actions and procedures required by sections 44-133.01 to

44-133.08, R. R. S. 1943, were taken by National American. The plan was approved by the Director of Insurance and notice was given to all stockholders. On November 9, 1973, the stockholders of National American approved the plan over plaintiffs' dissent. Notice was sent to all stockholders detailing the procedure by which they could exchange their shares. Under the statutory provisions the effective date for determining the fair value of the stock involved here was November 8, 1973.

Within the time provided by the act the plaintiffs in this action, who were the owners of 133 shares of National American stock, filed written objections and made written demand upon National American for payment of $2,000 per share, which plaintiffs asserted was the fair value. In response National American again offered to pay the sum of $1,139 per share to plaintiffs. Plaintiffs refused the offer. Within 10 days after November 9, 1973, National American deposited in a trust account in the United States National Bank of Omaha the sum of $1,139 per share for stock not previously exchanged, except that no sum was deposited for shares of stock owned by dissenters.

On January 23, 1974, within the statutory time, the plaintiffs filed this action under the provisions of section 44-133.06, R. R. S. 1943, praying for a determination of the fair value of plaintiffs' shares and for judgment and interest in accordance with the statute. The matter was not tried until June 1977. The evidence for the plaintiffs was that the fair value of the National American stock on November 8, 1973, was $1,416 per share. The evidence for the defendant was that $1,139 per share was the fair value. The defendant's expert testified that the $1,139 valuation included a 19 percent premium for the acquisition of the minority stock. The expert witnesses differed as to which insurance companies were comparable, particularly with respect to one

South Carolina company. The witnesses also differed in the comparative weight to be given to various elements of valuation.

On August 23, 1977, the District Court entered a memorandum opinion finding and determining that the fair value of the shares of National American Insurance Company on November 8, 1973, did not exceed $1,139 per share. The court then entered a decree on August 29, 1977, dismissing plaintiffs' petition with prejudice and taxing the costs to the plaintiffs. The plaintiffs have appealed.

On this appeal the plaintiffs contend that the District Court failed to correctly find and determine the fair value of the plaintiffs' shares, and failed to enter judgment against the defendant for the fair value of such shares, together with interest as provided by statute.

The statute provides that a proceeding of this kind shall be prosecuted as an equitable action, and the practice and procedure shall conform to the practice and procedure in equity cases. The memorandum opinion of the trial court establishes that the court accepted the defendant's evidence as to the fair value of the stock rather than the evidence of the plaintiffs. The record is persuasive that the determination was correct. On an appeal from a judgment in equity when credible evidence on material questions of fact is in conflict, the Supreme Court will consider the fact that the trial court observed the witnesses and their manner of testifying and accepted one version of the facts rather than the other. Wasserburger v. Coffee, 201 Neb. 416, 267 N. W. 2d 760.

While it may be contended that the language of the decree that the value "did not exceed $1,139.00 per share" was not a specific finding and determination of value, we are convinced that the only reasonable construction of the language, on the basis of the evidence, was a finding and determination that the fair

value of the shares of National American Insurance Company on November 8, 1973, was $1,139 per share. That finding and determination was correct.

The plaintiffs also contend that if the fair value of the shares was properly fixed at $1,139 per share as of November 8, 1973, the plaintiffs were entitled to a judgment against the defendant for such amount, together with interest, as provided by statute, and plaintiffs' petition was improperly dismissed.

Section 44-133.06, R. R. S. 1943, specifically provides that a dissenting shareholder in the position of the plaintiffs who has filed a petition seeking a finding and determination of fair value "shall be entitled to a judgment against the company for the amount of such fair value as of the day prior to the date on which such vote was taken approving such plan, together with interest thereon at the rate of five per cent per year to the date of such judgment." The same statute provides: "The judgment shall be payable only upon and simultaneously with the surrender to the company of the certificate or certificates representing such shares." It also provides: "Shares acquired by the company pursuant to payment of the agreed value therefor or payment of the judgment entered therefor, as provided in this section, shall stand canceled unless otherwise provided for in the plan of exchange."

It will be noted that the statutory pattern distinguishes between dissenting shareholders who have timely filed an action seeking a judicial finding and determination of fair value, and all other classes of shareholders. In view of the nature of the action and the terms of the plan and the offer, as well as the evidence offered by the defendant, it is apparent that the judgment in this case could not be less than $1,139 per share.

The statute requires the defendant to make payment of $1,139 per share upon all certificates surrendered within 10 days after November 9, 1973, and

to make payment under the terms of the plan as to any remaining shareholders. The plan required defendant, within 10 days after November 9, 1973, to deposit $1,139 per share for all stock not previously exchanged and paid for, but the plan specifically provided that no sum was to be deposited for shares of stock owned by dissenters. The defendant therefore has had the use of the funds payable to plaintiffs since November 1973.

The defendant attempts to justify the failure to enter judgment with interest on the assumption that since the plaintiffs failed to obtain any increase in valuation, they should be relegated to the same classification as those stockholders for whom funds were deposited by the defendant in November 1973. We disagree. The provisions of the act are mandatory. It cannot be assumed the Legislature intended to deprive any dissenting shareholder of the benefits of the statute simply because he failed to prove that the stock had any greater value than had previously been offered. It certainly should not be so interpreted where the defendant insurance company has retained the use of the funds due.

A proceeding by a dissenting minority shareholder for a finding and determination of the fair value of his shares under section 44-133.06, R. R. S. 1943, in essence, is similar to a condemnation action in reverse. The exchange is involuntary and his property is acquired over his dissent. The only issue involved in the litigation is the fair value of the stock being acquired.

The District Court was correct in fixing the fair value of plaintiffs' shares at $1,139 per share. The court failed to enter judgment against the defendant for that amount, plus interest, in accordance with the mandatory terms of the statute, and erred in dismissing plaintiffs' petition. The entry of judgment for the fair value, plus interest, was mandatory, but the assessment of costs lies in the discretion of the

court. It was proper to assess costs in the District Court to the plaintiffs when they failed to establish that the stock had any greater value than the amount offered to all shareholders.

The judgment of the District Court is vacated and the cause remanded to the District Court with directions to enter judgment in favor of each plaintiff against the defendant in the sum of $1,139 for each share of the common capital stock of the defendant, National American Insurance Company, owned by such plaintiff, together with interest thereon at the rate of 5 percent per year from November 8, 1973, to the date of entry of such judgment. Costs in the District Court to be assessed to the plaintiffs. Costs in this court are assessed to the defendant.

JUDGMENT VACATED. CAUSE REMANDED WITH DIRECTIONS.